UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAUL HARRIS,

                Petitioner,

v.                            Case No. 3:08-cv-429-J-34TEM

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

                Respondents.

_____

## ORDER

### I. Status

Petitioner Paul Harris, who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28 U.S.C. § 2254 on April 22, 2008, pursuant to the mailbox rule. Petitioner challenges a 2006 state court (Duval County, Florida) judgment of conviction for aggravated battery with a deadly weapon, asserting that (1) his guilty plea

---

[1] The Secretary of the Florida Department of Corrections, having custody of Petitioner, is the proper Respondent.

was unlawfully induced and involuntary because Petitioner did not understand the consequences and nature of the plea, and (2) his counsel was ineffective because she failed to inform Petitioner about how an early termination of probation would have affected his case.

Respondents have submitted a memorandum in opposition to the Petition.  See Respondents' Answer in Response to Order to Show Cause (Response) (Doc. #7).[2]  On June 26, 2008, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #5), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner, on October 21, 2008, notified the Court that he does not intend to file a Reply, but instead relies on his allegations and claims in the Petition.  See Petitioner's Answer in Response to Order to Show Cause (Doc. #10).  This case is ripe for review.

## II. Procedural History

On November 28, 2005, Petitioner Harris was charged with aggravated battery with a deadly weapon.  Resp. Ex. A at 13, Information.  Thereafter, pursuant to a negotiated plea agreement, he plead guilty in exchange for a sentence with a minimum of five years and a maximum of ten years of incarceration.  Id. at 16-17. At the January 27, 2006 plea hearing, see id. at 39-54, Transcript of the Plea Hearing (Plea Tr.), the trial judge accepted the plea

---

[2] The Court will refer to Respondents' exhibits as "Resp. Ex."

2

of guilty and found that there was a factual basis for the plea and that Petitioner freely and voluntarily entered the plea with a full understanding of the nature of the charge, the consequences of the plea, and the minimum and maximum possible sentences.[3] Id. at 53. At the February 17, 2006 sentencing, see id. at 55-110, Transcript of the Sentencing Hearing (Sentencing Tr.), the trial judge adjudicated Petitioner guilty and sentenced him to ten years of incarceration.  Id. at 22-26, Judgment; Sentencing Tr. at 108.

On appeal, Petitioner, through counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).  Resp. Ex. B, Initial Brief of Appellant.  On June 5, 2006, the appellate court issued an order permitting Petitioner to file a pro se brief, see Resp. Ex. C; however, Petitioner never filed a pro se brief.  The appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion on August 23, 2006.  Harris v. State, 937 So.2d 125 (Fla. 1st DCA 2006); Resp. Ex. D.  The mandate issued on September 19, 2006.  Resp. Ex. E.  Petitioner did not seek review in the United States Supreme Court.

On October 2, 2006, Petitioner filed his pro se motion for modification or reduction of sentence pursuant to Florida Rule of Criminal Procedure 3.800(c).  Resp. Ex. F.  The trial court denied the Rule 3.800 motion on October 31, 2006.  Resp. Ex. G.

---

[3] In citing to the transcripts, this Court will refer to the page number in the lower right-hand corner of the page since it is more readily visible.

Petitioner filed a <u>pro</u> <u>se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on April 16, 2007, arguing that (1) his guilty plea was unlawfully induced and involuntary because it was not entered with an understanding of the consequences and nature of the plea, and (2) his counsel was ineffective because she failed to inform him about how an early termination of probation would have affected his case. Resp. Ex. H at 1-11. The circuit court denied the Rule 3.850 motion on May 8, 2007. <u>Id</u>. at 12-13. Petitioner filed a motion for rehearing, <u>id</u>. at 17-28, which the trial court denied on June 5, 2007. <u>Id</u>. at 29.

Petitioner appealed, <u>see id</u>. at 30, and filed an appellate brief. Resp. Ex. I. The State filed its notice that it would not file an answer brief. Resp. Ex. J. On March 13, 2008, the appellate court affirmed the denial per curiam. <u>Harris v. State</u>, 977 So.2d 582 (Fla. 1st DCA 2008); Resp. Ex. K. The mandate issued on April 8, 2008. Resp. Ex. L.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. <u>See</u> 28 U.S.C. § 2244(d); Response at 9.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if

true, would entitle the applicant to federal habeas relief."
Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).
"It follows that if the record refutes the applicant's factual
allegations or otherwise precludes habeas relief, a district court
is not required to hold an evidentiary hearing." Id. The
pertinent facts of this case are fully developed in the record
before the Court. Because this Court can "adequately assess
[Petitioner's] claim[s] without further factual development,"
Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.
denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be
conducted.

## V.  Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. §
2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the
> phrase "'clearly established Federal
> law' . . . refers to the holdings . . . of
> [the Supreme Court's] decisions as of the time
> of the relevant state-court decision."
> Williams v. Taylor, 529 U.S. 362, 412, 120
> S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We
> have held that to be "contrary to" clearly
> established federal law, the state court must
> either (1) apply a rule "that contradicts the
> governing law set forth by Supreme Court case
> law," or (2) reach a different result from the
> Supreme Court "when faced with materially
> indistinguishable facts." Putman v. Head, 268
> F.3d 1223, 1241 (11th Cir. 2003).
>
> As regards the "unreasonable application"
> prong of § 2254(d)(1), we have held as
> follows:

A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed <u>de novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted). In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521. Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence."[4] 28 U.S.C. § 2254(e)(1).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1155-56 (11th Cir. 2010), <u>cert.</u> <u>denied</u>, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination

---

[4] This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052.  The

7

> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment."  <u>Id</u>., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different.[5] A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome."  <u>Id</u>., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding."  <u>Id</u>., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable."  <u>Id</u>., at 687, 104
> S.Ct. 2052.

<u>Harrington</u>, 131 S.Ct. at 787-88.

The two-part <u>Strickland</u> test applies to ineffective assistance claims concerning both the decision to accept a guilty plea offer and the decision to forgo a plea offer and stand trial.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 58-59 (1985).  Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  <u>Ward</u>, 592 F.3d at 1163 (citation omitted).  "Surmounting <u>Strickland's</u>

---

[5] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

high bar is never an easy task."  Harrington, 131 S.Ct. at 788
(quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is
accorded great deference.  "The standards created by Strickland and
§ 2254(d) are both 'highly deferential,' [Strickland], at 689, 104
S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct.
2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem,
review is 'doubly' so, Knowles[6], 556 U.S., at ----, 129 S.Ct. at
1420."  Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal
> court believes the state court's
> determination" under the Strickland standard
> "was incorrect but whether that determination
> was unreasonable - a substantially higher
> threshold." Schriro, supra, at 473, 127 S.Ct.
> 1933.  And, because the Strickland standard is
> a general standard, a state court has even
> more latitude to reasonably determine that a
> defendant has not satisfied that standard.
> See Yarborough v. Alvarado, 541 U.S. 652, 664,
> 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)
> ("[E]valuating whether a rule application was
> unreasonable requires considering the rule's
> specificity. The more general the rule, the
> more leeway courts have in reaching outcomes
> in case-by-case determinations").

Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009); see also
Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In
addition to the deference to counsel's performance mandated by
Strickland, the AEDPA adds another layer of deference--this one to

---

[6] Knowles v. Mirzayance, 129 S.Ct. 1411 (2009).

a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

Petitioner claims that his guilty plea was unlawfully induced and involuntary because he did not understand the consequences and nature of the plea (ground one). Additionally, Petitioner asserts that his counsel was ineffective because she failed to inform him about how an early termination of probation would have affected his case (ground two). According to Petitioner, no one had told him that early termination of probation was available in his case and meant that he would serve only one-half of his probationary period before the Department of Corrections had "an obligation to recommend" early termination if he had timely paid costs and restitution and had completed all other court-ordered programs. See Petition at 9. Petitioner concludes that, he would have accepted the trial court's offer of a split sentence if he had understood that, with the court's imposition of a five-year term of probation, he would have been eligible for early termination after two and one-half years. Id.

As acknowledged by the parties, Petitioner raised these claims in his Rule 3.850 motion. After identifying the two-prong Strickland ineffectiveness test as the controlling law, the court denied the motion, stating in pertinent part:

> In the Defendant's Motion, the Defendant claims that counsel rendered ineffective

> assistance by not reviewing all the
> possibilities of early termination of
> probation. He alleges he did not have time to
> think about probation as a sentencing
> alternative.
>
> The record clearly rebuts the defendant's
> allegations. Further, the Defendant was
> sentenced within the sentencing range agreed
> to by the State and the Defendant. (Exhibit
> "A").

Resp. Ex. H at 13. Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

To the extent that these claims were rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions. Thus, these claims will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After review of the record and the applicable law, the Court concludes that the state courts' adjudications of these claims were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of these claims.

Even assuming that the state courts' adjudications of these claims are not entitled to deference under AEDPA, Petitioner's claims are without merit. The trial court's conclusion is fully

11

supported by the record.   Petitioner, who was represented by counsel (Michelle Kalil), entered into a negotiated plea agreement, in which he agreed to a prison sentence with a range of five to ten years of imprisonment.  Resp. Ex. A at 16.  At the January 27, 2006 plea hearing, Petitioner affirmed that he had knowingly entered the guilty plea because he in fact was guilty of the crime of aggravated battery with a deadly weapon.   Plea Tr. at 44.   The trial court informed Petitioner that the charge is a second degree felony punishable by up to fifteen years in prison.  Id.  The State requested that the sentencing guidelines not be applied since the State had agreed to a sentencing range of between five and ten years of imprisonment.   Id. at 45.   Petitioner affirmed that he understood that the sentencing guidelines would not be applicable since the parties had agreed to a sentencing range.  Id. at 45-46.

Additionally, Petitioner acknowledged that he understood that he would be giving up certain rights as a result of the plea and that the sentence could be as low as five years and as high as ten years of imprisonment.   Id. at 46.   The trial judge informed Petitioner that, after a sentencing hearing, "the Court will determine what [Petitioner's] proper sentence should be, somewhere in that range."   Id. at 47.   Petitioner again affirmed his understanding of the range.  Id.  Petitioner acknowledged that no one had threatened, intimidated, or forced him to enter the guilty plea, and that no one had promised him that he would receive any

12

particular sentence other than the five to ten-year imprisonment range that the judge had reviewed with Petitioner.  Id. at 48-49.

Moreover, Petitioner agreed that he was not under the influence of any alcohol, drug, medication, substance or condition that might interfere with his understanding or appreciation of the guilty plea and the consequences of it.  Id. at 50.  He also acknowledged that he did not have any physical or mental defects which might prevent him from understanding the plea and its consequences.  Id.  Defense counsel also stated that she was not aware of any mental health issues relating to Petitioner.  Id.

Noting his ability to read and write the English language and completion of "some" education at the collegiate level, Petitioner agreed that he understood the plea form.  Id. at 51.  He acknowledged that his attorney had reviewed the plea form with him and had answered all his questions and that he was satisfied with his attorney's representation.  Id. at 49.

The State set forth the factual basis for the plea as follows:

> Had this case proceeded to trial, the state would be prepared to prove beyond a reasonable doubt that Paul Edward Harris on the 30th of October 2005, in the County of Duval and the State of Florida, knowingly committed a battery on Lori Anne Harris by actually and intentionally touching or striking Lori Anne Harris against her will and in committing the battery used a deadly weapon, to wit, a knife. In using that weapon[,] the victim did sustain multiple lacerations and puncture wounds, and this is contrary to the provisions of Section 784.045(1)(a)2, Florida Statutes.

13

Id. at 52.  The defense did not object to the factual basis, as outlined by the State.  Id. at 53.  Thereafter, the trial court accepted Petitioner's guilty plea and found that Petitioner had "freely and voluntarily entered his plea of guilty with a full understanding of the nature of the charge, the consequences of the plea, and the minimum and maximum possible sentence[s] . . . ." Id.

After hearing testimony from Petitioner and the victim[7] at the February 17, 2006 sentencing hearing, id. at 57-85, the trial court heard argument from the State and defense.  Id. at 86-91. Thereafter, the trial judge inquired about the negotiated plea agreement and whether he could impose "a blended punishment of prison, followed by a term of years of probation . . . ."  Id. at 91.  When the State and defense agreed that they had not contemplated a probationary period, id. at 92-93, the trial judge further inquired as to whether Petitioner wanted him to consider the option of a split sentence.  Id. at 93-100.

In presenting that option to Petitioner, the trial judge explained that a split sentence meant that "if there is a [probationary] violation, then the Court has the option of exposing [Petitioner] to the full 15 years," which is the maximum sentence

---

[7] The victim testified that she was "brutally and savagely attacked by [her] husband Paul Harris" and that she believed Harris intended to kill her that day.  Sentencing Tr. at 77-78.  She requested that the trial judge sentence him "to a maximum of ten years."  Id. at 80.

for the crime of aggravated battery with a deadly weapon, a second
degree felony.[8]  Id. at 100.  Further, the trial judge informed
Petitioner that, if he were to split the sentence and include a
probationary period, he envisioned special conditions, such as:
court-monitored probation with early termination only with the
court's permission, no contact with the victim, a payment plan for
restitution, and attendance at a minimum of three Alcoholics
Anonymous and Narcotics Anonymous meetings per week with proof to
the probation officer of such attendance.  Id. at 101-02.

After confering with Petitioner concerning the option of a
split sentence, id. at 91, 93, 101-02, defense counsel stated:

> Your Honor, I have had more time to
> explain to Mr. Harris the idea of [a] split
> sentence, and that is not what he contemplated
> when he entered his plea.  His understanding
> was he was going to be sentenced to a term of
> imprisonment and imprisonment only somewhere
> between five and ten years, and that is how he
> would like to follow through with this; that
> that [sic] was, I think, all of our
> understanding that Mr. Harris would not like
> the Court to consider a probationary, a split
> sentence.

Id. at 102.  Upon further inquiry from the trial judge as to
counsel's representations, Petitioner affirmed:

> That is correct, Your Honor, because I
> don't know what the future holds.  And I think
> you're right, I did not know that I was going
> to have this happen under the influence of

___

[8] Fla. Stat. § 784.045(1)(a)2; Resp. Ex. A at 13, 22.

alcohol.[9]   I don't plan on drinking anymore
or doing anything like this, you know, but I
would like to move out to the Midwest when I'm
done here in Florida and get on with my life.

Id. at 102-03.  The trial judge clarified: "So basically you want

a sentence that once you walk out, you're done is what you're

saying?"  Id. at 103. Petitioner replied, "Yes, sir."  Id.

Prior to imposing the sentence, the trial judge stated:

But I have given you choices.  **You made
your choice how you want the sentence to go in
terms of you want a sentence that you can
essentially walk away after you're finished,
so I have taken that into account as well.**

But in looking at your prior history and
looking at this case and how volatile and how
violent it was, in looking at the case from
Ms. Harris' standpoint as well, I certainly
sympathize with her.  I hope she can move on
with her life after today and get some
closure.  I can certainly understand the fear
that she has and that she is not going to be
able to for a long, long period of time be
able to -- maybe she'll never forget this
experience.  She probably won't.  And she'll
probably always have a fear of you.  And I've
factored all of that in the sentence that I'm
about to impose.

---

[9] The trial judge had notified Petitioner that, if he were to
give Petitioner a split sentence with a probationary term and then
Petitioner violated probation, "[Petitioner's] exposure then ranges
up to 15 years in prison on a second-degree felony."   Sentencing
Tr. at 95.   When Petitioner responded that he did not "plan on
violating any probation," the trial judge stated: "when you all got
married, you probably didn't plan on stabbing her either, but you
did."  Id.  Reminded of the unfortunate outcome upon his wife as a
result of the influence of alcohol, Petitioner was reluctant to
agree to the court's consideration of a term of probation that
could possibly result in a violation and a resulting fifteen-year
prison sentence.

Id. at 107-08 (emphasis added).  The trial judge then imposed a sentence of ten years of incarceration.  Id. at 108.

As the record reflects, pursuant to a negotiated plea agreement, Petitioner plead guilty in exchange for a sentence within a range of five to ten years of incarceration.  He affirmed, at the plea hearing, that he understood that the sentence could be as low as five years and as high as ten years.  And, later, at the sentencing hearing, after conferences with defense counsel and discussions with the trial judge, Petitioner agreed that he wanted a sentence of imprisonment, not the option of a split sentence with a term of probation.  Petitioner understood that the trial court's consideration of a split sentence would include "special conditions" of probation, which would expose Petitioner to up to fifteen years imprisonment if he violated that probation.  While Petitioner stated that he did not plan to violate probation, if imposed, he acknowledged that his alcoholic tendencies were the cause of his criminal behavior and that a violation of probation could expose him to fifteen years of incarceration.

Understanding his options, Petitioner ultimately made the decision to forego the court's consideration of a split sentence and the term of probation and opt for sentence of incarceration. As a result, the trial judge sentenced him to a ten-year prison sentence, which was within the range that Petitioner had negotiated with the State pursuant to a written plea agreement.  In view of

17

the record, this Court finds that Petitioner voluntarily entered the guilty plea with a full understanding of the nature of the charge, the consequences of the guilty plea, and the minimum and maximum possible sentences.[10]

Additionally, Petitioner argues that defense counsel failed to inform him about how early termination of probation would operate in his case.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003).

---

[10] The failure to inform a defendant of a collateral consequence of a plea cannot render a plea involuntary.  Brown v. State, 943 So.2d 899, 901 (Fla. 5th DCA 2006) ("A collateral consequence of a plea is a consequence that does not have a definite, immediate, and largely automatic effect on the range of the defendant's punishment.").  Here, the matter of early termination of probation is a collateral matter, and therefore, not one upon which Petitioner can challenge the voluntary and knowing nature of his guilty plea.

Petitioner has not alleged that counsel affirmatively misadvised him, but instead that counsel did not advise him at all about early termination of probation. When instructing Petitioner as to the special conditions he would require if he were to impose a split sentence, the trial judge referred to early termination of probation. See Sentencing Tr. at 101-02 ("[Petitioner] would have to have this Court's permission before his probation could be terminated early."). Florida Statutes section 948.04(3) states that "the Department of Corrections may recommend early termination of probation to the court at any time before the scheduled termination date" if the probationer has performed satisfactorily, has not been found in violation of any terms or conditions of supervision, and has met all financial sanctions imposed by the court.

There is no provision of Florida law that requires the Department of Corrections to recommend early termination of probation. See Harris v. State, 51 So.2d 1253, 1254 (Fla. 5th DCA 2011) ("The Department of Corrections . . . has discretion to recommend early termination under specified statutory conditions."). Additionally, the circuit court may exercise its discretion to discharge the probationer from further supervision. See Fla. Stat. § 948.05 ("A court may at any time cause a probationer or offender in community control to appear before it to be admonished or commended, and, when satisfied that its action

19

will be for the best interests of justice and the welfare of society, it may discharge the probationer or offender in community control from further supervision."); Sentencing Tr. at 102.

Petitioner has failed to establish that counsel's performance was deficient for failing to inform him about early termination of probation.   Initially, Petitioner entered into a negotiated plea agreement, where he agreed to a sentence within a range of five to ten years of imprisonment.   And, after a lengthy sentencing hearing, Petitioner decided that he was not interested in a split sentence with a term of probation, but instead wanted a sentence of imprisonment, preferably for five years, not ten.   In view of the record, counsel knew that Petitioner, while fully informed of his options, was not interested in the trial court's consideration of a split sentence with a probationary term.   Thus, any failure on the part of counsel to inform Petitioner of how early termination of probation would operate in his case was not deficient performance, especially when it is doubtful that the trial court would have approved an early termination of probation in light of the fact that one of the primary purposes of probation in this type of case is to ensure that the defendant receives alcohol treatment and has no contact with the victim.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown a "reasonable probability that, but for counsel's errors, he

20

would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.  Petitioner acknowledged that he plead guilty because he was in fact guilty.  Additionally, the evidence against Petitioner was overwhelming, and his wife undoubtedly would have testified against him if he had proceeded to a trial.  If the jury had found Petitioner guilty of aggravated battery with a deadly weapon, he would have faced a maximum of fifteen years of imprisonment.  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard, <u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim fails." <u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009).  The remaining claim is without merit.  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

### IX. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a

certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of May, 2011.


MARCIA MORALES HOWARD
United States District Judge

sc 5/31
c:
Paul Edward Harris
Ass't Attorney General (Guard)

23